UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LISA THOMPSON                                    CIVIL ACTION

VERSUS                                           NO: 24-01347

WESTINGHOUSE ELECTRIC                            SECTION: T (5)
COMPANY LLC

## <u>ORDER AND REASONS</u>

Before the Court is a Motion for Summary Judgment filed by Defendant Westinghouse Electric Company, LLC ("Westinghouse"). R. Doc. 37. Plaintiff Lisa Thompson has filed a response in opposition. R. Doc. Defendant has filed a reply. R. Doc. 55. For the reasons set forth below, the Court will grant Defendant's Motion and dismiss Plaintiff's claims with prejudice.

**BACKGROUND**

According to her Complaint, R. Doc. 1, Plaintiff was hired by Westinghouse in 2021 as a Business Analyst and progressed to a leadership role within the Agile Methods group. Although never formally promoted, she claims she assumed Agile Team Lead (ATL) duties on the RadMan project—including organizing Agile ceremonies, leading sprint planning, onboarding team members, and coordinating across disciplines. Her contributions, she asserts, were recognized by colleagues and supported by peer feedback, but her leadership experience was deliberately omitted from her 2022 performance review by Charles Thiel, her supervisor.

1

Beginning in late 2022, Plaintiff claims was subjected to increasingly hostile treatment from Thiel. He allegedly micromanaged her, interrupted her during meetings, excluded her from communications, and undermined her work. Plaintiff claims that white and male employees were not treated similarly. According to Plaintiff, Defendant ultimately posted the ATL position in October 2022, a role Plaintiff says she had already been informally performing. She claims she was neither notified of the opening nor considered for the position, despite having previously expressed interest in leadership training and being told she was eligible for it. Instead, she claims, Defendant hired a less qualified white female contractor, Jenna Manning, who lacked Agile credentials and experience.

On February 13, 2023, Plaintiff asserts she met with HR Business Partner Nora Malcho and explicitly complained about racial and gender disparities in promotions and team dynamics. Her complaints were documented, she says, but never investigated. On March 6, 2023, she asserts, she submitted peer feedback for inclusion in her review; three days later, she was terminated. Although the RadMan project had ended, Plaintiff says she had already been reassigned to the Digital Technology Platform Architecture initiative, unlike others who were reassigned and retained. According to Plaintiff, she was the only team member let go. Others—some with lesser credentials and no complaints of discrimination—remained employed. Moreover, she asserts, deposition testimony from multiple team members confirmed that Business Analysts like Plaintiff were still needed on other projects. Plaintiff contends that her termination was not due to any real reduction in force but was retaliation for her internal complaints of race and sex discrimination.

She asserts that Defendant's delay in investigating her concerns and its deviation from internal EEO protocols further demonstrate pretext. In a company of more than 10,000 employees, Plaintiff states she was the only one terminated from a reassigned project team shortly after engaging in protected activity.

Plaintiff filed the instant suit against Defendant, alleging that during her employment with Defendant as a Business Analyst, she was discriminated against on the basis of her race (African American) and gender (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. She also alleges she was subjected to harassment, or a hostile work environment, in violation of Title VII and § 1981. She further alleges she was wrongfully discharged in retaliation for making complaints of gender and race discrimination. Defendant has filed a Motion for Summary Judgment, R. Doc. 37, to which Plaintiff has responded. R.Doc. 54. Defendant filed a reply. R. Doc. 55.

**LAW AND ANALYSIS**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL

3

1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation removed). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323-24. This burden is not satisfied by "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be

4

entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Courts "do not...in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)) (emphasis in original). Thus, "summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)) (emphasis in original).

## A.

Plaintiff first asserts a claim that she suffered a hostile work environment on the basis of her race and gender. "To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Hostile work environment claims under § 1981 use the same elements. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400 (5th Cir. 2021) (citing *Ramsey*

5

*v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). For element 4—to affect a term, condition, or privilege of employment—the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)). The complained-of behavior "must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). A court evaluates the conduct under the "totality of the circumstances" by considering "the frequency of (1) the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Harris*, 510 U.S. at 23).

The "Severe and Pervasive" requirement is disjunctive. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). The required showing of severity varies inversely with the pervasiveness of the conduct. *Lauderdale*, 512 F.3d at 163. But "isolated incidents (unless extremely serious)" cannot support a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). A hostile work environment "necessarily rests on an allegation that an employer has created a working environment heavily charged with ... discrimination." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Violations occur when a workplace is "permeated with discriminatory behavior." *Harris*, 510 U.S. at 21. Although a plaintiff does not need to make a prime facie case of discrimination, she must allege sufficient

facts to support each element of her Title VII claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

Even considering the allegations in the light most favorable to Plaintiff, the alleged incidents cited by Plaintiff lack the severity and pervasiveness necessary to support hostile work environment claims. On pervasiveness, Plaintiff alleges that Defendant, particularly through her supervisor Charles Thiel, fostered a discriminatory and retaliatory environment that disproportionately targeted Black women and permitted hostile conduct to go unchecked. According to Plaintiff, after Charles Thiel replaced her prior manager, Roger Weller, the work environment deteriorated rapidly. Thiel micromanaged her work, excluded her from meetings, and disregarded her performance contributions—despite her informal role of leading Agile meetings and supporting the team's productivity. She alleges that, despite being the only Black female on the team following Jayed Stokes's departure, Plaintiff was the only person not reassigned when the RadMan project ended. Essentially, Plaintiff asserts there was a "good ole boy" attitude, and points to testimony from Kelly Verberne, a colleague and former Agile team member, that Thiel treated women, particularly African-American women, differently from men: speaking over them and dismissing them. Similarly, former Agile Team Lead Jayed Stokes, another Black woman, testified that the discriminatory conduct she experienced as a Black woman was a "double whammy" of both racial and gender bias.

Defendant points out that Plaintiff's hostile work environment and harassment claims are premised on her belief that Thiel "micromanaged" her and at times was "dismissive" of her.

7

Defendant further contends that her "micromanagement" allegation is based on nothing more than that Thiel, her direct supervisor, asking her why she had missed a team meeting and then disappeared from work for the afternoon. Plaintiff gave no reason for failing to appear but then accused Thiel of harassment because he inquired about her absence. Defendant states that Thiel later apologized for any offense and asked that she simply let him know when she would not be present. R. Doc. 37-1, p. 8. Similarly, as to her claim that Thiel was "dismissive," Defendant asserts that there is nothing in the record beyond Plaintiff's claim that Thiel was "very dismissive verbally." Further, Plaintiff admitted she had no reason to believe that Thiel ever made any derogatory remarks about African-American people or women. Instead, she could only surmise, "I don't know what else it could have been." *Id.*

As for her performance review, which Plaintiff admits was favorable but allegedly incomplete, Defendant points out that Thiel declined to include a review of Plaintiff's performance when he was not her supervisor. In fact, given the perceived problems with the ATLs, he advised her that she may not want to be tied to that work. Nevertheless, Plaintiff met with HR representative Nora Malcho to discuss her dissatisfaction with the performance review, and Malcho agreed to supplement her review with a record of her performance under her former manager. Plaintiff then obtained feedback from her coworkers, which was provided to Malcho.

As to not being recommended for a management training program, despite not being a manager, Defendant points to the record, which shows that Mr. Weller, Thiel's supervisor, expressed support for Plaintiff but noted they would have to put together a training plan for the

8

year, and that he would consider this as an option as management worked through their training needs over the following weeks. Plaintiff nevertheless wanted to participate in training, to which Thiel did not object, instead echoing Weller that they needed to put together a training program. Although Plaintiff wanted to take this specific training, Weller recommended different training, in which Plaintiff participated. As to the "T2M" training Plaintiff wanted, she was not forbidden from taking that training, but was advised that she could sign up for it later in the year. However, her position was eliminated before this could occur due to a reduction in force from a lack of funding for the RadMan project.

As Defendant argues, these complaints about Thiel taken in the aggregate do not rise to the level of severe and pervasive harassment. Heightened scrutiny of an employee's work is not the type of behavior that would support a hostile work environment claim because it is not sufficiently severe or pervasive. *See Robinson v. Paulson*, No. CIV.A. H-06-4083, 2008 WL 4692392, at *18 (S.D. Tex. Oct. 22, 2008) ("an employer's scrutiny of an employee's work, 'while unpleasant and annoying, did not create ... [a] hostile work environment.'") (internal citations omitted). Furthermore, discourtesy or rudeness does not necessarily amount to racial or gender harassment. In this case, Plaintiff fails to identify evidence that would support her allegation of severe and pervasive harassment based on race or gender. Plaintiff makes no allegations that Thiel ever made any racial slurs, derogatory comments, or racist remarks, and admits that she has no evidence of such. Also, Plaintiff can point to nothing beyond her own assumptions that Thiel's conduct was directed to her because of her race or gender. Accordingly, Plaintiff's claim of a hostile work

9

environment will be dismissed.

B.

Next, Plaintiff contends that she was discriminated against based on race and gender when Defendant failed to promote her to a lateral position and then terminated her employment. To establish a prima facie case of race discrimination based on a "failure to promote," Plaintiff must show that: (1) she is a member of [a] protected class; (2) she sought and was qualified for the position; (3) she was rejected for the position; and (4) the employer continued to seek or promoted applicants with the plaintiff's qualifications. *See Culbert v. Cleco Corp.*, 926 F. Supp. 2d 886, 893–94 (W.D. La. 2013), aff'd, 538 Fed. Appx. 504 (5th Cir. 2013).

Here, Defendant asserts that Plaintiff admitted she never applied for the Agile Team Lead position. Because she failed to apply for the position in question, Defendant points out, she would have to show that she was deterred by a "known and consistently enforced policy of discrimination." *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (citing *Teamsters v. United States*, 431 U.S. 324, 363–66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). However, she makes no such claim that Defendant had a policy of discrimination.

Defendant also argues that Plaintiff cannot show she was qualified for the position in question, because she admitted during her deposition she did not have the necessary skill set or meet the requirements for the job posting. According to Defendant, the position required a "first level Scrum Master certification, professional Scrum Master PSMI, or a certified Scrum Master CSM" and a minimum of seven years of experience as a Scrum Master Agile Team Leader, among

10

other required qualifications. Plaintiff admits that she did not hold any of the requisite Scrum Master certifications, nor did she have seven years of experience as a Scrum Master Agile Team Leader. Thus, Defendant asserts Plaintiff fails to meet the second element of her prima facie case and her claim must be dismissed.

Additionally, Defendant argues that Plaintiff cannot show that she was clearly better qualified than the employee that was selected for the position, as opposed to merely better qualified or as qualified. The "clearly better qualified" standard is difficult to satisfy; the differences in qualifications between job candidates "are not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons the plaintiff was better qualified for the position at issue." *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 279 (5th Cir. 1999). To succeed, the disparity between the plaintiff and the person hired must "jump off the page and slap you in the face." *Id.* Here, Defendant points out that Plaintiff did not apply for the position and did not meet the requirements therefor. Further, the woman who was selected, Jenna Manning, possessed the required Scrum certification and seven years of experience, and had already been working in that rile as a contractor when she applied for the team leader position as a full-time employee.

Plaintiff argues that she can point to evidence satisfying a prima facie cause of action for failure to promote under Title VII. R. Doc. 54, pp. 20-21. Here, she states, Defendant promoted a white woman while ignoring Plaintiff's obvious desire for the team lead position and desire to complete the training required. Plaintiff maintains she had been performing the full scope of the

11

role for months on the RadMan project. Although Defendant claims she never applied and lack the requisite qualifications, Plaintiff points to testimony supporting her claim that she had expressed her desire to be a team leader, including asking for training. She asserts Defendant created a "catch-22" because Defendant used the absence of training to say she was not qualified. Plaintiff contends the position was never posted before it was filled by a white woman with less experience and tenure at the company. Plaintiff contends that a reasonable jury could find that she was denied advancement because of her race and sex, and that Defendant's failure to act on her complaints demonstrates a culture that not only tolerates but preserves these disparities.

Defendant counters that Plaintiff did not apply for the position and, if she had, did not possess the requisite qualifications. Defendant reiterates that the woman selected for the position had the requisite qualifications, which Plaintiff did not have. Defendant points out that whether Plaintiff's co-workers believed the woman actually selected was as competent after she was hired as Plaintiff would have been is not material to the issue. That issue, as Defendant correctly points out, is whether Plaintiff was clearly more qualified than Manning at the time Manning was selected. Defendant argues that Plaintiff fails to make such a showing.

The Court agrees that Plaintiff's claims regarding the failure to promote fail. Defendant points to evidence in the record that the team leader position was posted and that Plaintiff is incorrect in alleging otherwise. Furthermore, there can be no doubt, by Plaintiff's own admission, that she did not have the requisite qualifications even though she believed she could perform the job as well or better than the woman selected. That Plaintiff's position was eventually eliminated

12

before she could undergo T2M training is not relevant to whether she met the requisite qualifications for the position when the hiring decision was actually made.

Similarly, Plaintiff fails to make a prima facie case that her termination was based on race or gender. To establish a prima facie case that her termination was based on race or gender, Plaintiff must prove that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) she was replaced by an individual of a different race or gender, or that Westinghouse treated individuals of a different race or gender more favorably than it treated her. *See Cagler v. Lockheed Martin Corp.*, No. CIV. A. 97-2953, 1998 WL 637363, at *3 (E.D. La. Sept. 16, 1998). Here, Defendant asserts, Plaintiff was not replaced by someone who was not African-American or male because the loss of the RadMan funding resulted in the elimination of her position. The business unit never hired a Business Analyst, the position held by Plaintiff. Moreover, Defendant argues, she cannot demonstrate that she was treated less favorably than similarly-situated non-African American or male employees. The only other person on the RadMan team reporting to Thiel was Justina Ghartey, an African-American female, and she held the position of Agile Time Lead and was a certified Scrum Master. Ghartey qualified for another position when the RadMan project ended and was redeployed.

Defendant contends that Plaintiff cannot establish pretext on her termination claim. Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), if Plaintiff is able to demonstrate a prima facie case of discrimination (which she cannot), the burden shifts to Defendant to rebut her case by

13

demonstrating a legitimate nondiscriminatory justification for its actions. *See also Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 890 (W.D. La. 2003). Once the defendant articulates a reason that, if believed, would support a finding that the action was nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture" and the plaintiff must carry the ultimate burden of proving intentional discrimination. *Id.*

Here, Defendant claims it has asserted a legitimate non-discriminatory reason for Plaintiff's termination, namely that there was no more work for her and her position was eliminated following the discontinuation of the RadMan project. Defendant maintains that Plaintiff cannot meet her burden to prove that Defendant's proffered reason for her termination was mere pretext for intentional discrimination.

Plaintiff points out that other RadMan team members, including white and male employees, were retained and reassigned to other internal roles. Plaintiff argues that it was only her, who had reported her concerns to HR about disparate treatment, that was not reassigned to another position. Thus she maintains she was singled out for disparate treatment.

C.

This leads the Court to Plaintiff's assertion that she was retaliated against for reporting her concerns about gender and racial discrimination. "Title VII prohibits an employer from taking adverse employment action against an employee because he engages in a protected activity." *Joseph v. Phillips*, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014). "Section 1981 mirrors the requirements of Title VII in this context." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319

14

(5th Cir. 2004). To state a claim for retaliation, the plaintiff must allege facts that tend to establish: "(1) that she engaged in activity protected by Title VII, (2) that adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

An employee has engaged in a protected activity under Title VII if she (1) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" (the "participation clause") or (2) "opposed any practice made an unlawful employment practice by this subchapter" (the "opposition clause"). *Carpenter*, 2021 WL 1198261 at * 4 (citing 42 U.S.C. § 2000e-3(a)). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). An employee "cannot simply complain that she received unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)). The employee must refer to conduct that could plausibly be considered discriminatory in intent or effect, thus alerting the employer of its alleged discriminatory practice. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326–27 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007))

Plaintiff contends she was fired in retaliation for reporting sexual and racial discrimination against Thiel. Each time she made a report, she contends, she faced escalating adverse treatment and eventually termination. She contends that she made race and sex-based complaints on

15

February 6, 10, and 13, and that within 24 days thereafter she was terminated. Defendant conducted no investigation and took no corrective actions, she asserts. Instead, she points out that she was the only Black female on the project who was separated while less qualified employees remained.

Defendant first argues Plaintiff has not engaged in any protected activity. Defendant reiterates that her complaints about micromanagement, dismissive communication style, and failure to write her performance review to include non-supervised performances do not amount to a hostile work environment sufficient to satisfy Title VII's anti-retaliation provision. Furthermore, Defendant argues, she was not qualified for the team leader position and did not even apply for the position. Finally, regarding training, Defendant points out that she was not forbidden to undergo such training, and instead her position was eliminated due to lack of funding before she could be offered such training. In fact, Defendant points out, she did receive alternative training. Lastly, Defendant argues that Plaintiff cannot establish any causal connection between the protected activity and her termination. There is no dispute that the RadMan project ended, and Plaintiff has not identified any position for which she was qualified and that was available for her to be transferred to when the decision to eliminate her position was made. Defendant points out that Plaintiff has identified no evidence, other than her subjective belief, that the elimination of her position and termination of employment was based on retaliation for protected complaints.

Plaintiff repeats her earlier allegations and argues that the proffered explanation of project changes does not withstand scrutiny in light of continued hiring and project expansion immediately following her departure. Plaintiff asserts she has met her burden of proving her retaliation claim

16

by showing close enough timing between he protected activity and the adverse employment action.

The Court agrees with Defendant that Plaintiff fails to establish a causal connection between any alleged protected complaints and the elimination of her position due to the loss of funding for the RadMan project. The record evidence supports a determination that the project on which Plaintiff worked ended, and she does not identify any position for which she would have been qualified that was denied her. Therefore, Plaintiff's retaliation claims also fail.

**CONCLUSION**

Defendant has established that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 37) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE